IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KITTY HEMPHILL, SHIRLEY MCGHEE,
DEBORAH SHAW, RICKEY MCCALL and
SANDRA RUSSELL, MINNIE and MARVIN
MILLER, and ALFREDA SMITH and
DESIREE WOODS,                                                                    PLAINTIFFS,

VS.                                                        CIVIL ACTION NO. 4:05CV169-P-D

COLDWELL BANKER REAL ESTATE
CORPORATION; COLDWELL BANKER
FIRST GREENWOOD-LEFLORE REALTY,
INC.; LEFLORE PROPERTIES, INC.;
JIM PRUETT; LINDA PRUETT; BANK OF
COMMERCE; STATE BANK & TRUST
COMPANY; TERRY GREEN; and FIRST
FRANKLIN FINANCIAL CORPORATION,                                DEFENDANTS.

## PARTIAL FINAL JUDGMENT

These matters come before the court upon Defendant State Bank & Trust Company's motions to compel arbitration of the claims of Plaintiffs Minnie Miller, Alfreda Smith, Deborah Shaw, and Desiree Woods [27, 153, and 172, respectively] as well as the motions to join therein by Defendants Coldwell Banker Real Estate Corporation [304], Bank of Commerce and Terry Green [306], and Linda Pruett and Coldwell Banker First Greenwood-Leflore Realty [307]. After due consideration of the motions and the response filed thereto, the court finds as follows, to-wit:

It is undisputed that Plaintiffs Minnie Miller, Alfreda Smith, Deborah Shaw, and Desiree Woods signed arbitration agreements with State Bank.

Plaintiffs Minnie Miller and Alfreda Smith signed arbitration agreements in connection with a promissory note for a loan with State Bank. The arbitration provision provides in pertinent part:

1

> I and Lender agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party.

Plaintiffs Minnie Miller and Alfreda Smith also signed separate arbitration agreements providing that: "Any Claim shall, at the request of the Customer, Bank or any Covered Persons, whether made before or after institution of legal proceedings, be determined by binding arbitration."

On April 16, 2003 Plaintiff Deborah Shaw signed an arbitration agreement in connection with opening a deposit account with State Bank which provides in pertinent part:

> Any claim, dispute or controversy between Customer and Bank ... arising from or related to any matter, including, but not limited to, the Deposit Account, any past or future interactions, business or dealings between the parties ... shall be resolved, upon the unilateral or joint election of Customer or Bank ... by binding arbitration, as hereinafter provided, pursuant to the Rules of the American Arbitration Association ("AAA") in effect at the time the Claim is asserted.

On August 30, 2004 Plaintiff Desiree Woods, as a co-borrower on a mortgage loan with Plaintiff Alfreda Smith, signed an arbitration agreement which contains a provision identical to that quoted immediately above for Plaintiff Deborah Shaw.

The scope of the arbitration agreements in this case is extremely broad, especially with regard to the claims asserted by the plaintiffs in this case. Under the Federal Arbitration Act, written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The Supreme Court has consistently held that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 476 (1989); *Moses H. Cone Mem. Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

A person is bound by the contents of a contract he signs, whether he reads it or not. *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 262-63 (5th Cir. 2004) (even an illiterate person is charged with reading a contract); *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 455 (Miss. 2004) ("It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it."); *Massey v. Tingle*, 867 So.2d 235, 240 (Miss. 2004) ("[I]n Mississippi, a person is charged with knowing the contents of any document that he executes."); *Stephens v. Equitable Life Assur. Society of the U.S.*, 850 So.2d 78, 83-84 (Miss. 2003); *Turner v. Terry*, 799 So.2d 25, 36 (Miss. 2001) ("[P]arties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence.").

"In adjudicating a motion to compel arbitration under the [FAA], courts generally conduct a two-step inquiry. The court must first determine whether the parties agreed to arbitrate the dispute. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. The court then must determine if any legal constraints foreclose arbitration of those claims." *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006) (internal citations omitted).

Regarding the first prong, it is undisputed that the agreements are valid and the plaintiffs do not allege fraud in the inducement. In opening the subject bank accounts and entering the subject promissory notes, the plaintiffs were given stand-alone arbitration agreements and/or a promissory note containing an arbitration clause which they had the opportunity to read and which they decided to sign.

As to the second prong, the dispute in this case that State Bank participated in a RICO

enterprise along with the other defendants by "bankrolling" the scheme is covered by the broad scope of the arbitration provisions in question.

The plaintiffs argue that the Mississippi Supreme Court's recent decision in *Rogers-Dabbs Chevrolet–Hummer, Inc. v. Blakeney*, 950 So.2d 170 (Miss. February 22, 2007) justifies a denial of the instant motion to compel arbitration.

In *Blakeney*, the plaintiff entered an arbitration agreement with a dealership in connection with the purchase of a Humvee. This agreement was very broad in its terms, covering "all claims, demands, disputes, or controversies" arising from the sale of the vehicle. The plaintiff levied claims of breach of warranty, invasion of privacy, negligent hiring and supervision, civil fraud, and intentional infliction of emotional distress, alleging that he never received the title to the SUV, the vehicle had various mechanical malfunctions, and that one or more dealership employees stole his identity and used his title to forge fraudulent titles for stolen vehicles. The trial court granted the dealership's motion to compel arbitration regarding the breach of warranty claim, but excepted the other claims, including the claim for civil fraud.

The Supreme Court in *Blakeney* affirmed the trial court's decision, concluding that the plaintiff's civil fraud claim fell outside the scope of the arbitration agreement. In this regard, the court wrote:

> [T]oday's case does not involve fraud in the inducement of the arbitration agreement; therefore, the arbitration agreement is valid and enforceable. Blakeney's claim of fraud in the underlying suit is civil fraud outside the scope of the arbitration agreement. Our holding in today's case, in effect, upholds the arbitration agreement as a valid agreement, but determines that Blakeney's claims are outside the scope of the arbitration agreement.

*Blakeney*, 950 So.2d at 178, n. 9. The Court cautioned that: "By no means are we invalidating the

4

arbitration agreement on the account of Blakeney asserting fraud; we are excluding from arbitration the claims which Blakeney asserts are outside the scope of this particular arbitration agreement; thus, failing to meet the first prong [of the arbitrability test requiring that the dispute fall within the scope of the agreement]." *Id*. at 178, n. 9.

In its own words, the Court in *Blakeney* did not consider its ruling a change in arbitration law, writing: "[W]e are of the firm opinion that today's decision in no way undermines what is now a long line of cases from this Court undergirding the federal policy favoring arbitration." *Id*. at 178.

Given the powerful federal policy favoring arbitration, as routinely expressed by the U.S. Supreme Court and the Fifth Circuit Court of Appeals, and given the *Blakeney* Court's admonition that they were not invalidating the arbitration agreement merely because the plaintiff asserted a claim of civil fraud (not fraud in the inducement), this court concludes that the decision in *Blakeney* was confined to its facts and cannot be used to invalidate the arbitration agreement in this case.

In any event, the nature of the fraud asserted in *Blakeney* is distinguishable from that asserted in this case. In *Blakeney*, the Court concluded that it was beyond reason that the plaintiff in that case would contemplate that signing an arbitration agreement in connection with purchasing a vehicle would cover the dealership stealing his identity using his title to perpetrate criminal activities after the sale. In this case, however, the asserted fraudulent activity of State Bank and the other defendants is reasonably related to the arbitration agreements since they were signed in connection with loans or in opening bank accounts – all in furtherance of the plaintiffs' desire to get a mortgage loan to purchase a house. "The FAA expresses a strong national policy in favoring arbitration of disputes, and all doubts concerning arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). This court seriously doubts that

5

*Blakeney* can be used to prevent the plaintiffs' claims against State Bank from going to arbitration given the *Blakeney* decision, by its own terms, confined itself to the particular arbitration agreement with regard to the particular facts involved and given the Court's insistence that "[b]y no means are we invalidating the arbitration agreement on the account of *Blakeney* asserting fraud." This court thus resolves any doubts *Blakeney* might pose in favor of arbitration as mandated by the Fifth Circuit.

Accordingly, the court concludes that State Bank's motion to compel arbitration of the claims of Plaintiffs Minnie Miller, Alfreda Smith, Deborah Shaw, and Desiree Woods should be granted.

The motions to join in State Bank's motion to compel arbitration filed by the remaining defendants should also be granted pursuant to *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir. 2000).

In *Grigson*, the Fifth Circuit Court of Appeals adopted the following Eleventh Circuit test contained in *MS Dealer Services Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999):

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.
>
> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.
>
> Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson*, 210 F.3d at 527 (citing with approval *Franklin*, 177 F.3d at 947) (reformatted for clarity).

Pursuant to *Grigson*, the second, alternative test for equitable estoppel requires that the plaintiff signatory raise "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 210 F.3d at 527. Having considered the parties' arguments in this case and the other identical cases pending before this court, the court concludes that the very nature of the subject plaintiffs' RICO claims against all defendants in this matter renders the second *Grigson* test applicable to this case.

Any RICO claim necessitates (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). An "enterprise" can be "any individual, partnership, corporation, association, or other legal entity and a union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williams*, 224 F.3d 425 (5th Cir. 2000).

In the Complaint, the subject plaintiffs assert that all of the defendants, the signatory and nonsignatories to the arbitration agreements between the subject plaintiffs and State Bank, are liable for participating in an enterprise of racketeering activity. For example, paragraph 1 of the Amended Complaint states: "*Each* Defendant named above, as is set forth in the paragraphs that follow, has violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962, *et seq*. (RICO)." (emphasis added). Paragraph 2 states: "In particular, *each* Defendant named above has participated in a pattern of 'racketeering activity' by each committing two or more violations of Federal criminal

7

statutes, including statutes relating to mail fraud and wire fraud." (emphasis added). Paragraph 3 states: "These Defendants each were members of a group of persons, who invested in and/or maintained an interest in, and/or participated in an 'enterprise,' which was engaged in and/or which affected interstate commerce."

Thus, the plaintiffs' RICO claims constitute "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

Since all of the claims of Plaintiffs Minnie Miller, Alfreda Smith, Deborah Shaw, and Desiree Woods against all of the remaining defendants (except First Franklin Financial Corporation) should be compelled to arbitration, said claims should be dismissed from this action without prejudice. This is appropriate given that all of the plaintiff's claims in this action are covered by the arbitration agreement. "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). "Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by ... 9 U.S.C. §§ 9-12." *Id*.

Since Defendant First Choice Funding, Inc. has not yet filed a joinder in State Bank's motions to compel arbitration, the court cannot compel the subject plaintiffs' claims against First Choice to arbitration pursuant to *Grigson* at this time.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendant State Bank & Trust Company's motions to compel arbitration the claims of Plaintiffs Minnie Miller, Alfreda Smith, Deborah Shaw, and Desiree Woods [27, 153, and 172,

respectively] is **GRANTED**;

(2) The motions to join State Bank & Trust Company's motions to compel arbitration by Defendants Coldwell Banker Real Estate Corporation [304], Bank of Commerce and Terry Green [306], and Linda Pruett and Coldwell Banker First Greenwood-Leflore Realty [307] are **GRANTED** pursuant to *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir. 2000); therefore,

(3) All of the claims of Plaintiffs Minnie Miller, Alfreda Smith, Deborah Shaw, and Desiree Woods against the remaining defendants (except First Franklin Financial Corporation) are **DISMISSED WITHOUT PREJUDICE** and are **COMPELLED TO BINDING ARBITRATION**; and

(4) The claims of the remaining plaintiffs remain.

**SO ORDERED** this the 1st day of November, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE